IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ISLAMIC ASSOCIATION OF DESOTO, TEXAS, INC., | § § § | |
| Plaintiff, | § § | |
| VS. | § § § | Civil Action No. 3:12-CV-0613-D |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS NOMINEE FOR ACCREDITED HOME LENDERS INC., et al., | § § § § § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action, the purchaser of a mortgaged residence asserts claims arising from the posting of the property for foreclosure. Concluding that defendants are entitled to summary judgment dismissing each claim, the court grants defendants' motion and dismisses this lawsuit with prejudice.

I

Mikhail Muhammad ("Muhammad") purchased real property located in DeSoto, Texas from Accredited Home Lenders, Inc. ("AHL").[1] He financed the purchase, executing

---

[1]In recounting the factual background, the court summarizes the evidence in the light most favorable to plaintiff as the summary judgment nonmovant and draws all reasonable inferences in its favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

a promissory note and deed of trust.  The deed of trust named defendant Mortgage Electronic Registration Systems, Inc. ("MERS") solely as nominee of AHL.  MERS, as AHL's nominee, assigned the note and deed of trust to defendant HSBC Bank USA, N.A. ("HSBC") as trustee on behalf of Ace Securities Corporation Home Equity Loan Trust, Series 2005-SD2, Asset-Backed Pass-Through Certificates ("Ace").[2]  According to defendants, the original note is physically maintained by Ocwen Loan Servicing, LLC ("Ocwen") as servicing agent for HSBC.  Muhammad later conveyed the property to plaintiff Islamic Association of DeSoto, Texas, Incorporated ("Islamic").

According to defendants, when Muhammad defaulted on the mortgage, Ocwen sent him a notice of default and intent to accelerate.  Ocwen then appointed a substitute trustee and posted the property for foreclosure.  Just days before the sale, Islamic sued Ace and MERS in state court seeking a temporary restraining order to prevent the foreclosure sale. Defendants removed the case and filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss.  The court granted the motion but permitted Islamic to replead.  *Islamic Ass'n of DeSoto, Tex., Inc. v. Mortg. Elec. Registration Sys., Inc.*, 2012 WL 2196040, at *4 (N.D. Tex. June 15, 2012) (Fitzwater, C.J.).

In its amended complaint, Islamic asserts claims for (1) breach of contract and anticipatory breach of contract; (2) violations of the Texas Debt Collection Practices Act ("TDCPA"), Tex. Fin. Code Ann. §§ 392.001-.404 (West 2006), and the Texas Deceptive

---

[2]Defendants maintain that plaintiff incorrectly named "Ace Securities Corporation Home Equity Loan Trust" as a defendant in the first amended complaint.

Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-17.826 (West 2011); (3) unreasonable collection efforts; (4) negligent misrepresentation and gross negligence; (5) a request for an accounting; (6) suit to quiet title and trespass to try title; (7) bifurcation of the note; (8) trafficking in unfunded securities; and (9) a declaration that defendants' acceleration of the note was wrongful.  Islamic also seeks an accounting.  Defendants move for summary judgment, and Islamic opposes the motion.

II

When a party moves for summary judgment on a claim for which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the opposing party's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party does so, the opposing party must go beyond its pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The opposing party's failure to produce proof as to any essential element of a claim renders all other facts immaterial.  *See Trugreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.) (citations omitted).  Summary judgment is mandatory if the opposing party fails to meet this burden.  *Little*, 37 F.3d at 1076.

- 3 -

III

Islamic alleges claims for breach of contract and anticipatory breach of contract.[3]

A

1

Islamic first asserts that, because MERS was never the holder of the promissory note, when it assigned the note and deed of trust to Ace, it transferred only the deed of trust. According to Islamic, because MERS did not assign both the promissory note and the deed of trust to Ace, the note and deed of trust were impermissibly "split," the assignment to Ace had no "force," and Ace lacked the authority to foreclose on the property.

Defendants maintain that they are entitled to summary judgment because Islamic is not a party to the note or deed of trust—both of which are contracts between Muhammad and the defendants—and Islamic lacks privity of contract and has no standing to assert claims based on the note or deed of trust; even if Islamic has standing to assert claims on behalf of Muhammad (the original borrower), Islamic is not a party to any of the assignments and therefore lacks standing to bring any claim based on an allegedly invalid assignment; and the note and deed of trust were not split, because the deed of trust shows that AHL was the original lender and that MERS acted as AHL's nominee for holding the security interest in

_____

[3]To prevail on a breach of contract claim under Texas law, Islamic must prove four elements: (1) the existence of a valid contract; (2) Islamic performed its duties under the contract; (3) defendants breached the contract; and (4) Islamic suffered damages as a result of the breach. *See, e.g.*, *Lewis v. Bank of Am. NA*, 343 F.3d 540, 544-45 (5th Cir. 2003) (Texas law).

- 4 -

the property.  Accordingly, defendants argue that MERS was properly identified as the beneficial holder of the lender's interest in the deed of trust.

Islamic responds that a party must be the holder of the note to be entitled to enforce the note or foreclose on collateral; that to prove the transaction through which the note was acquired, HSBC or Ace must show that the note, as well as the deed of trust, were transferred to it via assignment; that it has pleaded in its amended complaint "sufficient factual allegations showing that HSBC or [Ace] [was] never the holder, transferee, or owner of the Note," P. Br. 7; that because neither HSBC nor Ace became the owner of the note, neither could become a holder of the note and seek to enforce it; and that the deed of trust does not provide that MERS could transfer or otherwise assign the note, and, because MERS never held the note, its assignment to Ace of the deed of trust separate from the note has no force or effect.

2

Assuming *arguendo* that Islamic has standing to assert claims on behalf of Muhammad,[4] the court holds that Islamic has failed to raise a genuine issue of fact regarding whether the note and deed of trust were properly assigned to Ace and were thus enforceable by Ace.  Even if the court assumes that Texas law permits borrowers to challenge the

---

[4]Courts in this circuit have repeatedly held that borrowers do not have standing to challenge the assignment of their mortgages because they are not parties to those assignments. *See, e.g., Woods v. Bank of Am., N.A.*, 2012 WL 1344343, at *5 (N.D. Tex. Apr. 17, 2012) (Boyle, J.); *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F.Supp.2d 616, 623 (N.D. Tex. 2011) (Means, J.); *Eskridge v. Fed. Home Loan Mortg. Corp.*, 2011 WL 2163989, at * 5 (W.D. Tex. Feb. 24, 2011).

assignment of their mortgages, Islamic has failed to establish that the note and deed of trust were improperly "split."

Muhammad executed the note in favor of AHL, the original lender.  Muhammad executed the deed of trust for the benefit of MERS, "acting solely as a nominee for [AHL]." Ds. App. 11.[5]  AHL, as lender, retained the security interest in the property.  The deed of trust states that it "secures to [AHL]: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note."  *Id.* at 12.

If Islamic is arguing that the assignment to Ace resulted in splitting the deed of trust from the note, this argument has been repeatedly rejected by this and other district courts in the Fifth Circuit.  *See, e.g.*, *Enis v. Bank of Am., N.A.*, 2012 WL 4741073, at *2 (N.D. Tex. Oct. 3, 2012) (Fitzwater, C.J.); *Cannon v. JPMorgan Chase Bank, N.A.*, 2011 WL 6838615, at *5 (E.D. Tex. Nov. 16, 2011); *DeFranceschi v. Wells Fargo Bank, N.A.*, 837 F.Supp.2d 616, 623 (N.D. Tex. 2011) (Means, J.); *Eskridge v. Fed. Home Loan Mortg. Corp.*, 2011 WL 2163989, at * 5 (W.D. Tex. Feb. 24, 2011).  This is because the "transfer of an obligation secured by a note also transfers the note because the deed of trust and note are read together to evaluate their provisions."  *Cannon*, 2011 WL 6838615, at *5 (quoting *DeFranceschi*, 837 F.Supp.2d at 623) (internal quotation marks omitted).  Moreover, under Texas law, where

---

[5]The deed of trust states: "The beneficiary of this Security Instrument is MERS (solely as nominee for [AHL] and [AHL]'s successors and assigns) and the successors and assigns of MERS."  Ds. App. 12.

"MERS is a beneficiary and nominee for both the originating lender and its successors and assigns by the express language in the Deed of Trust," and MERS assigns the deed of trust, "the situation falls within an exception to the general rule that a party holding only the deed of trust cannot enforce the mortgage." *Wiley v. U.S. Bank., N.A.*, 2012 WL 1945614, at *4 (N.D. Tex. May 30, 2012) (Boyle, J.) (quoting *Eskridge*, 2011 WL 2163989, at * 5) (internal quotation marks omitted).  In short, there is no merit to Islamic's argument that the deed of trust and note were "split," rendering any attempted foreclosure defective. *DeFranceschi*, 837 F.Supp.2d at 623.  Accordingly, the court grants defendants' motion for summary judgment on this basis for Islamic's breach of contract and anticipatory breach of contract claims.[6]

B

Islamic alleges breach of contract and anticipatory breach of contract claims on the ground that Ace failed to satisfy a statutory requirement to give Islamic an opportunity to pay the past due installments before accelerating the entire indebtedness.  Defendants move for summary judgment on this claim, contending, *inter alia*, that because Islamic's interest in the property arose subsequent to the lien created by the deed of trust, Islamic is an inferior lienholder and, as such, does not have the same rights to foreclosure notice as does a

---

[6]To the extent Islamic asserts a separate claim for "bifurcation of the note," the court is unable to discern any difference between this claim and Islamic's "split-the-note" theory in support of its contract claims.  The court therefore holds that defendants are entitled to summary judgment dismissing Islamic's "bifurcation of the note" claim for the reasons discussed here.

mortgagee.  Defendants also argue that they sent proper notice of default and intent to accelerate under the terms of the deed of trust and applicable law.[7]

Islamic offers no evidence or argument in response.  Because it has failed to raise a genuine issue of material fact, the court grants defendants' motion for summary judgment on this basis for Islamic's contract claims.

C

Islamic alleges that the deed of trust did not authorize Ocwen, the mortgage servicer, to appoint a substitute trustee to conduct the foreclosure.  Defendants contend they are entitled to summary judgment because, under the Texas Property Code, a mortgagee may appoint or authorize a mortgage servicer to appoint a substitute trustee to have all powers as the original trustee.  *See* Tex. Prop. Code Ann. § 51.0075(c) (West 2007) ("Notwithstanding any agreement to the contrary, a mortgagee may appoint or may authorize a mortgage servicer to appoint a substitute trustee or substitute trustees to succeed to all title, powers, and duties of the original trustee.").  Defendants maintain that Texas law expressly permits Ocwen, as servicing agent, to perform the functions required by law and by the applicable loan documents to effect the foreclosure of secured real property when there has been a default.  *See* Tex. Prop. Code Ann. § 51.0025 (West 2007) (expressly authorizing mortgage servicer to administer foreclosure of property under § 51.002 on behalf of mortgagee, if

_____

[7]Specifically, they maintain that a notice of default and intent to accelerate was sent to Muhammad, giving Muhammad and Islamic notice of default, of their intent to accelerate in 30 days, and of the action required to cure the default.

certain conditions are met).  Defendants argue that they complied with Texas law and the deed of trust and were authorized to accelerate and foreclose on the secured property.

Islamic offers no evidence or argument in response.  Because it has failed to raise a genuine issue of material fact on whether Ocwen, as mortgage servicer, was permitted to appoint a substitute trustee to conduct the foreclosure, the court grants defendants' motion for summary judgment on this ground of Islamic's contract claims.

D

Islamic alleges that defendants violated an implied duty of good faith and fair dealing by failing to allow Islamic to reinstate the note.  Defendants move for summary judgment on the ground, *inter alia*, that defendants did not owe Islamic a duty of good faith and fair dealing.  Islamic offers no evidence or argument in response.

In Texas, there is "no special relationship between a mortgagor and mortgagee." *Collier v. Wells Fargo Home Mortg.*, 2006 WL 1464170, at *8 (N.D. Tex. May 26, 2006) (Kinkeade, J.) (citing *UMLIC VP LLC v. T & M Sales & Envtl. Sys., Inc.*, 176 S.W.3d 595, 612 (Tex. App. 2005, pet. denied)).  Furthermore, Islamic has failed to point to any evidence that would enable a reasonable jury to find that defendants violated an implied duty of good faith and fair dealing, if such a duty existed.  Accordingly, the court grants defendants' motion for summary judgment on this ground for Islamic's contract claims.

E

Because Islamic has failed to raise a genuine issue of material fact on any of the

grounds on which it relies to establish its breach of contract and anticipatory breach of contract claims, the court grants defendants' motion for summary judgment and dismisses these claims.

IV

Defendants move for summary judgment on Islamic's TDCPA claim.

A

Islamic alleges that defendants violated the TDCPA by misrepresenting the amounts allegedly owed on the loan, wrongfully accelerating and posting the property, and imposing wrongful charges; that defendants misrepresented the extent of the debt to Islamic by not allowing Islamic to pay the arrearage, as authorized by the deed of trust, and instead demanding the entire loan amount; that defendants did not account for credits such as insurance or credit default swaps from the trust, as authorized by the pooling and servicing agreement, and because defendants' demand for payment came weeks after the notice of acceleration and the posting of foreclosure, defendants misrepresented the account to Islamic; and that Ace and Ocwen were required by law to be bonded pursuant to Tex. Fin. Code Ann. § 392.101 (West 2006), and because they were not, they are not authorized to collect debts in the state of Texas.

Defendants contend they are entitled to summary judgment on the TDCPA claim because Islamic has no evidence to support any of the elements of the claim. Defendants argue Islamic is not a "consumer" under the TDCPA because it was not a party to the note

or deed of trust, and there is no evidence that defendants attempted to collect from Islamic or solicit for collection any amounts due under the note or deed of trust; defendants point to an absence of evidence that they misrepresented the amounts allegedly owed by Islamic on the loan, that they wrongfully accelerated and posted the property, or that they imposed wrongful charges; and defendants maintain that Ocwen has obtained and filed a copy of a surety bond with the Texas Secretary of State, pursuant to the requirements of Tex. Fin. Code Ann. § 392.101.

B

The TDCPA prohibits a debt collector from, *inter alia*, using a deceptive means to collect a debt, Tex. Fin. Code Ann. § 392.304(a)(19) (West 2006); misrepresenting the character, extent, or amount of a consumer debt, *id.* § 392.304(a)(8); using unfair or unconscionable means to collect or attempt to collect interest or a charge, fee, or expense incidental to the obligation unless expressly authorized, *id.* § 392.303(a)(2); and threatening to take an action prohibited by law, *id.* § 392.301(a)(8).[8] Defendants point to the absence of evidence that they engaged in any of these prohibited acts. Islamic offers no evidence or argument in response. Accordingly, because Islamic has failed to meet its summary judgment burden of establishing a genuine issue of material fact on its TDCPA claim, the court grants defendants' motion and dismisses this claim.

The court also dismisses Islamic's claim for damages and attorney's fees under Tex.

---

[8]Although the TDCPA also prohibits other actions, Islamic has only alleged violations of Tex. Fin. Code Ann. §§ 392.304(a)(19) and (8), 392.303(a)(2), and 392.301(a)(8).

Fin. Code Ann. § 392.403 and for actual and consequential damages under the DTPA, Tex.

Bus. & Com. Code Ann. § 17.50, because these claims are based on an alleged violation of

the TDCPA, on which Islamic has failed to raise a genuine issue of material fact.

V

Defendants move for summary judgment on Islamic's unreasonable collection efforts

claim.

A

Under Texas law, "unreasonable collection efforts" is an intentional tort that requires

a showing that debt collection efforts "amount[ed] to a course of harassment that was willful,

wanton, malicious, and intended to inflict mental anguish and bodily harm." *Smallwood v.

Bank of Am.*, 2012 WL 32654, at *4 (N.D. Tex. Jan. 6, 2012) (Fitzwater, C.J.) (quoting *EMC

Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868-69 (Tex. App. 2008, no pet.)).  Texas courts

generally reserve this tort for actual collection efforts, such as telephone calls or approaching

the debtor, that overstep the bounds of routine collection methods through excessive

harassment.  *See, e.g.*, *EMC Mortg.*, 252 S.W.3d at 864-65 (lender accidentally foreclosed

on plaintiffs' property and sent a "'very large, intimidating man'" who, "yelling and

screaming, demanded the keys to the house, and told the [plaintiffs'] family to get out");

*Pioneer Fin. & Thrift Corp. v. Adams*, 426 S.W.2d 317, 319 (Tex. Civ. App. 1968, writ ref'd

n.r.e.) (collection agency called plaintiff five times in one night and once threatened personal

violence).

- 12 -

B

Islamic alleges that it complied with all requests of defendants, but they failed to give Islamic an opportunity to reinstate the loan or cure the default, and intentionally misled and delayed Islamic to the point of foreclosure.  It asserts that defendants assessed late charges and penalties, improperly placed the property in foreclosure, and imposed numerous additional charges on the mortgage loan account, thus using deceptive means to collect the debt.

Defendants maintain that they are entitled to summary judgment on this claim because, *inter alia*, Islamic has failed to allege that it ever received any communications or notices from defendants, and Islamic has no evidence that defendants ever had any contact with Islamic or that defendants took part in any collection efforts toward Islamic that amounted to a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish or bodily harm, as required under Texas law.  Islamic also points to the absence of evidence that defendants engaged in any sort of pattern of abusive and harassing behavior in an effort to force Islamic to pay Muhammad's debt, misrepresented the amounts allegedly owed on the mortgage loan, wrongfully accelerated and posted the property, imposed wrongful charges, or suffered any damages as a result of defendants' alleged conduct.

Islamic offers no evidence or argument in response to defendants' motion.  Because it has failed to create a genuine issue of material fact on whether defendants engaged in

collection efforts that amounted to harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm, defendants are entitled to summary judgment dismissing this claim.

VI

Islamic alleges claims for negligent misrepresentation and gross negligence.

Defendants maintain that they are entitled to summary judgment because, *inter alia*, Islamic has no evidence that defendants made any representations to Islamic or that Islamic ever received any communications or notices from defendants in any form.[9] Defendants also contend that, because the factual allegations in support of Islamic's negligent misrepresentation claim relate to the note and deed of trust—specifically, defendants' authority and right to foreclose—the claim is barred by the economic loss rule.

In response, Islamic has not adduced any evidence of a communication by defendants that could form the basis of a negligent misrepresentation claim or a claim for gross

---

[9]Under Texas law, to prevail on a claim for negligent misrepresentation, a plaintiff must prove:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which [the defendant] has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers a pecuniary loss by justifiably relying on the representation.

*Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (agreeing with definition in Restatement (Second) of Torts § 552 (1977)).

- 14 -

negligence.   Accordingly, the court grants defendants' motion for summary judgment dismissing this clam.[10]

## VII

Islamic seeks an accounting of all transactions on the mortgage loan.

"An action for accounting may be a suit in equity, or it may be a particular remedy sought in conjunction with another cause of action." *Michael v. Dyke*, 41 S.W.3d 746, 754 (Tex. App. 2001, no pet.) (citations omitted), *abrogated on other grounds as recognized by Buck v. Palmer*, 379 S.W.3d 309, 323 (Tex. App. 2010), *rev'd by* 381 S.W.3d 525 (Tex. 2012).   To be entitled to an accounting, a party usually must have a contractual or fiduciary relationship with the one from whom the party seeks the accounting.   *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717 (Tex. App. 2002, pet. denied) (citing *Hunt Oil Co. v. Moore*, 656 S.W.2d 634, 642 (Tex. App. 1983, writ ref'd n.r.e.)).

Defendants move for summary judgment on the ground that Islamic and defendants do not have a contractual relationship and that Texas does not recognize a fiduciary duty owed by a lender to a borrower.   Islamic offers no evidence or argument in response.

---

[10]Defendants are also entitled to summary judgment under the economic loss doctrine. Texas law "prohibit[s] tort claims if the parties' relationship and attendant duties arise from a contract." *DeFranceschi*, 837 F.Supp.2d at 625 (citing *Quintanilla v. K-Bin, Inc.*, 993 F. Supp. 560, 563 (S.D. Tex. 1998); *Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 493-95 (Tex. 1991) (holding that plaintiff cannot recover under tort law "[w]hen the only loss or damage is to the subject matter of the contract")).   Here, "[a]ny rights or obligations of the parties stemmed from the [d]eed of [t]rust," and thus any damages "arise directly from the alleged breach of this contractual relationship[.]"   *Sanghera v. Wells Fargo Bank, N.A.*, 2012 WL 555155, at *6 (N.D. Tex. Feb. 21, 2012) (Boyle, J.) (dismissing negligent misrepresentation claim between lender and borrower).

Because Islamic has not raised a genuine issue of material fact on whether it and defendants had a contractual or fiduciary relationship, the court grants defendants' motion for summary judgment dismissing Islamic's accounting request.

## VIII

Defendants move for summary judgment on Islamic's quiet title and trespass-to-try-title claims.

## A

"A suit to quiet title is an equitable action." *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App. 2001, no pet.) (citing *Katz v. Rodriguez*, 563 S.W.2d 627, 629 (Tex. Civ. App. 1978, writ ref'd n.r.e.)). "[T]he purpose of a traditional suit to quiet title is to remove a cloud from the title created by an invalid claim." *Teon Mgmt., LLC v. Turquoise Bay Corp*., 357 S.W.3d 719, 726 (Tex. App. Oct. 27, 2011, pet. denied) (citing *Wright v. E.P. Operating Ltd. P'ship*, 978 S.W.2d 684 (Tex. App. 1998, pet. denied)). "Generally, a plaintiff in a suit to quiet title must 'prove, as a matter of law, right, title, or ownership in himself with sufficient certainty to enable the court to see that he has a right of ownership and that the alleged adverse claim is a cloud on the title that equity will remove.'" *XTO Energy Inc. v. Nikolai*, 357 S.W.3d 47, 59 n.13 (Tex. App. 2011, pet. filed) (quoting *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App. 2009, pet. denied)). "A plaintiff in a suit to quiet title must prove and recover on the strength of his own title, not the weakness of his adversary's title." *Fricks*, 45 S.W.3d at 327 (citing *Alkas v. United Sav. Ass'n of Tex., Inc*., 672 S.W.2d 852, 857 (Tex.

App. 1984, writ ref'd n.r.e)).

Trespass to try title is a statutory claim brought under Tex. Prop. Code Ann. § 22.001 (West 2000).  *See id.* ("A trespass to try title action is the method of determining title to lands, tenements, or other real property.").  To maintain an action for trespass to try title, the person bringing the suit must have title to the land sought to be recovered. *Ramsey v. Grizzle*, 313 S.W.3d 498, 505 (Tex. App. 2010, no pet.).  A plaintiff's right to recover depends on the strength of its own title, not the weaknesses of the title of its adversary.  *Id*.  In a trespass-to-try-title action, the plaintiff is required to prove its title by establishing (1) a regular chain of title of conveyances from the sovereign to the plaintiff; (2) a superior title to that of the defendant out of a common source; (3) title by limitations; or (4) prior possession that has not been abandoned.  *Teon Mgmt.*, 357 S.W.3d at 728.

B

Defendants contend they are entitled to summary judgment dismissing plaintiff's quiet title and trespass-to-try-title claims on the grounds that Muhammad defaulted on the note, defendants rightfully accelerated the note, and defendants therefore have a rightful claim to title to the property.  In other words, defendants posit that Islamic has no evidence that it is entitled to possession.

Islamic responds that it has established that it was deeded the property via general warranty deed.  It maintains that "[t]his satisfies the requirement that [it] 'allege right, title, or ownership in [it]self with sufficient certainty to enable the court to see that [it] has a right

of ownership that will warrant judicial interference' in the issue of the deed of trust's validity." P. Br. 12 (citation omitted). Islamic argues that, because defendants are not the holders or owners of the note, and because Islamic holds the deed and possesses the property, Islamic's claim is superior to that of defendants. It posits that the original note to AHL has been paid in full either by waiver, insurance, payment by investors, or credit default swaps.

The only "evidence" Islamic cites in support of its quiet title and trespass-to-try-title claims is the allegation that it acquired the property by general warranty deed. Its other assertions—that its claim is superior to that of defendants and that the original note to AHL has been paid in full—are conclusory[11] and unsupported by summary judgment evidence. Defendants maintain that, when Muhammad defaulted on the note, they rightfully accelerated the note and therefore have a superior claim to the property. Islamic has not produced any contrary summary judgment evidence. Accordingly, defendants are entitled to summary judgment dismissing Islamic's suit to quiet title and trespass-to-try-title claims.

IX

Defendants move for summary judgment dismissing Islamic's "trafficking unfunded securities" claim. They maintain that no such action exists under Texas law, and that, to the extent Islamic bases this claim on the allegation that defendants assigned notes that the

---

[11]Unsubstantiated and subjective beliefs and conclusory allegations and opinions of fact are not competent summary judgment evidence. *See, e.g., Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

holder did not fund and attempted to assign a mortgage in violation of a pooling and servicing agreement, Islamic's claim is unsupported, speculative, and based on assignments or agreements to which it is not a party.

Islamic offers no evidence or argument in response.  Accordingly, because it has not raised a genuine issue of material fact on its "trafficking in unfunded securities" claim, the court grants defendants' motion for summary judgment and dismisses this claim.

X

Islamic seeks a declaratory judgment[12] that defendants have violated the terms and spirit of the deed of trust and note and that any attempt by defendants should be enjoined. It also asks the court to find that defendants breached the deed of trust contract, that Ace does not own the note and has no standing to attempt to foreclose, that the lien is invalid, and that defendants forfeited the principal and interest on the loan.  Defendants move for summary judgment on this claim, arguing that all of Islamic's requests are duplicative of its remaining claims and that Islamic lacks standing to assert any claims related to the interpretation or enforcement of the note or deed of trust.

---

[12]Although Islamic filed this lawsuit in Texas state court and sought a declaratory judgment under Texas law, "[w]hen a declaratory judgment action filed in state court is removed to federal court, that action is in effect converted into one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202."  *Redwood Resort Props., LLC v. Holmes Co.*, 2007 WL 1266060, at *4 (N.D. Tex. Apr. 30, 2007) (Fitzwater, J.) (citation omitted).

The federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, does not create a substantive cause of action. *See Lowe v. Ingalls Shipbuilding, A Div. of Litton Sys., Inc.*, 723 F.2d 1173, 1179 (5th Cir. 1984) ("The federal Declaratory Judgment Act . . . is procedural only[.]") (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950)). A declaratory judgment action is merely a vehicle that allows a party to obtain "an early adjudication of an actual controversy" arising under other substantive law. *Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 170 (5th Cir. 1990). Federal courts have broad discretion to grant or refuse declaratory judgment. *See, e.g.*, *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991). "Since its inception, the [DJA] has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The DJA is "an authorization, not a command." *Pub. Affairs Assocs., Inc. v. Rickover*, 369 U.S. 111, 112 (1962). It gives federal courts the competence to declare rights, but it does not impose a duty to do so. *Id.* (collecting cases).

The court, in its discretion, declines to adjudicate Islamic's declaratory judgment claim because it is duplicative of Islamic's breach of contract claims, which this court has already addressed and determined should be dismissed. *See Metcalf v. Deutsche Bank Nat'l Trust Co.*, 2012 WL 2399369, at *9 (N.D. Tex. June 26, 2012) (Fitzwater, C.J.) (noting that declaratory judgment action should be dismissed because it duplicated plaintiffs' quiet title claim); *Kougl v. Xspedius Mgmt. Co. of DFW, L.L.C.*, 2005 WL 1421446, at *4 (N.D. Tex.

- 20 -

June 1, 2005) (Fitzwater, J.) (denying as redundant a declaratory judgment claim seeking contract interpretation where this would be resolved as part of breach of contract action); 6 Charles Alan Wright, et al., Federal Practice & Procedure § 1406, at 30-31 (3d ed. 2010) ("When the request for declaratory relief brings into question issues that already have been presented . . . a party might challenge the counterclaim on the ground that it is redundant and the court should exercise its discretion to dismiss it."). The court therefore grants defendants' motion for summary judgment and dismisses Islamic's declaratory judgment claim.

\* \* \*

For the foregoing reasons, the court grants defendants' September 18, 2012 motion for summary judgment. This action is dismissed with prejudice by judgment filed today.

**SO ORDERED.**

January 16, 2013.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE